*884 OPINION.
Graupner:
The questions involved in this appeal are: (1) Whether the executors are entitled to a deduction for 1916 for the exhaustion, wear and tear of the "farm buildings arising out of their use and employment in the farming and stock-raising business; (2) whether the royalties received for iron ore mined, removed, and stockpiled prior to March 1, 1913, are taxable income; and (3) whether the executors are entitled to a greater allowance for depletion of the Mary E. McCahill mineral interests on the ore mined, removed, stockpiled, and sold after March 1, 1913, than that allowed by the Commissioner? We will take up the propositions in the order named above.
From the evidence submitted it appears that decedent was the owner throughout the year 1916 of a 1,360-acre farm in Wabasha County, Minn., upon which there were a number of buildings which were used for the purpose of carrying on farming operations and stock raising as a business, and that no depreciation on said buildings, or any of them, had been allowed in the Commissioner’s determination of net income for the year 1916. The Commissioner during the trial acknowledged that a mistake was made in the valuation of the farm buildings during the year 1916, and we are of the opinion that the executors are entitled to a reasonable deduction for 1916 for the exhaustion, wear and tear of the farm buildings, and they are allowed to deduct from gross income the sum of $1,362.50, the amount claimed by them as and for depreciation on the farm buildings during said year.
The second proposition involved in this appeal is whether or not the amount received for ore mined, transported, and removed from the premises of the lessor prior to March 1, 1913, but which was not paid for until after March 1,1913, is taxable income. The Shenango Furnace Co., a corporation, operated a mine on the premises of lessor for several years prior to 1910 and mined, shipped, and paid a royalty of 20 cents per ton to lessor, according to the terms of the lease, for all ore which was so shipped. Beginning in July, 1910, and continuing during the years 1911 and 1912 and until about February 28, 1913, the lessee, through the open-pit method of mining, mined and removed a certain amount of ore and stockpiled it on premises in which the lessor had no interest, and the lessee did not pay for this ore so removed and stockpiled. On December 31, 1913, a demand was made by the lessor upon the lessee for payment of the amount of royalty provided for in the lease and, in case of failure to pay such royalty, the lessor demanded possession of the mine, whereupon an action was commenced by the lessee to enjoin the lessor from taking possession of the mine or in any way inter *885 fering with the operations of the mine. While the action was pending, negotiations of settlement were carried on and, on July 16,1914, a settlement was made whereby the lessee agreed to pay the lessor for all ore mined and stockpiled prior to March 1, 1913, as well as for all ore mined and stockpiled subsequent to March 1, 1913, according to the findings hereinbefore set forth. In the determination by the Commissioner of gross income for the years 1916 and 1911 were included the amounts paid by the lessee to the lessor for ore mined and stockpiled prior to March 1, 1913. Under the terms of the lease set forth in the findings, the relation of the decedent to the lessee was that of landlord and tenant. Such leases hare been before the courts frequently and it has uniformly been held that they create only the relation of landlord and tenant and that the royalties are rents and are not the purchase price of ore sold. State v. Evans, 99 Minn. 220; Lynch v. Alworth-Stephens Co., 267 U. S. 364; O. D. 591 (Cum. Bul. No. 3, p. 113). The amount due decedent from the lessee prior to March 1, 1913, was an obligation which not even a forfeiture of the lease would have extinguished. Appeal of Producers Fuel Co. 1 B. T. A. 202. Only the increase, if any, over the cost or March 1, 1913, value could be taxed under the statute. Lynch v. Turrish, 247 U. S. 221. Under the terms of the settlement between the lessor and the lessee, no interest was paid on the amount due prior to March 1, 1913. From the evidence sub-, mitted we are of the opinion that the royalties received for ore mined, removed, and stockpiled prior to March 1, 1913, were not taxable income but were choses in action and due decedent prior to March 1, 1913. The determination of the Commissioner in regard to the amount paid for ore mined prior to March 1, 1913, is disallowed.
The third proposition involved in this appeal is whether or not the executors are entitled to a greater amount of allowance for the depletion of mineral interests on the ore mined, removed, stockpiled, and sold after March 1, 1913, than that allowed by the Commissioner. Some evidence was submitted at the trial as to the estimated fair market value per ton on March 1, 1913, but such evidence was very indefinite, both as to the value per ton on March 1, 1913, and as to the amount of tonnage, and, in the absence of sufficient proof to the contrary, the executors are not entitled to a greater rate of depletion for ore mined after March 1, 1913, whether such ore was mined by the open-pit method or underground method, than that allowed by the Commissioner, and the determination of the Commissioner as to the value of ore mined after March 1,1913, is approved.
AetjNdell not participating.